UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHELLE GONZALEZ, an individual person, on behalf of herself and all others similarly situated,

Plaintiff,

v.

LANCE CONN, an individual, and JAMES BRYANT, an individual,

Defendants.

No. 2:19-cv-02155-MCE-CKD

**MEMORANDUM AND ORDER**

Plaintiff Michelle Gonzalez ("Plaintiff") seeks redress from Defendants Lance Conn ("Conn") and James Bryant ("Bryant") (collectively, "Defendants") for violations of California state law. On September 20, 2019, Plaintiff filed a Class Action Complaint in the Superior Court of the State of California, County of Solano, against Defendants, on behalf of herself and others similarly situated, alleging claims under the California Anti-Phishing Act of 2005, Cal. Bus. & Prof. Code §§ 22948 et seq.; the California False Advertising Act, Cal. Bus. & Prof. Code §§ 17500 et seq.; and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. Defendants removed the case to this Court on October 24, 2019, on diversity grounds pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). Defendants claim that Conn's inclusion as a defendant, which would otherwise destroy the requisite diversity, has no legal basis and should be

1

disregarded for jurisdictional purposes.  Plaintiff moves for remand, arguing that Conn was properly named and his presence in this case made removal to this Court improper.  ECF No. 4.  For the reasons set forth below, Plaintiff's Motion to Remand is DENIED.[1]

**BACKGROUND**

The National Litigation Law Group ("NLLG") was originally formed under the laws of Oklahoma as a professional limited liability company ("PLLC") of which Bryant was the sole member.  Ex. A, Leveroni Decl., Defs.' Opp. Mot. Remand, ECF No. 6-1 ("Leveroni Decl.").  On July 10, 2017, Defendants decided to domesticate NLLG in the District of Columbia ("D.C.") and formed NLLG DC, PLLC under the laws of D.C.  Ex. B, Leveroni Decl.  Defendants subsequently merged the Oklahoma and D.C. entities to create NLLG, PLLC.  Ex. C–D, Leveroni Decl.  On September 22, 2017, under the laws of D.C., Defendants converted NLLG, PLLC into a limited liability partnership ("LLP") named NLLG, LLP.  Ex. E, Leveroni Decl.  The following February, Defendants filed an application in California to register NLLG, LLP as a foreign LLP and received the certificate of filing in December 2018 from the Secretary of State.  Ex. G. Leveroni Decl.

According to Plaintiff, beginning on September 23, 2017, Defendants advertised they were qualified to render professional legal services in California in their capacity as owners of NLLG, PLLC, even though the PLLC ceased to exist only the day before.  Compl., ECF No. 1, ¶ 7 ("Compl.").  Defendants nevertheless personally solicited Plaintiff and putative class members to retain NLLG for legal representation in future debt collection lawsuits.  Id. ¶ 9.  On May 21, 2018, Plaintiff signed a retainer agreement with NLLG for this purpose.  Ex. 1, Compl.

The following year, Wells Fargo Bank N.A. and American Express National Bank separately filed two debt collection actions against Plaintiff in Solano County Superior

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

2

Court. Compl. ¶ 10. In response, Defendants allegedly emailed two letters to Plaintiff, stating that the firm was qualified to represent her in both actions but she must complete the following requirements: (1) advance a "first appearance fee" in order for NLLG to make a first appearance on Plaintiff's behalf; (2) complete and transmit a client financial statement; and (3) execute a limited power of attorney authorizing NLLG to settle the actions on Plaintiff's behalf without her further knowledge or consent. Id. ¶ 11. Plaintiff complied with all three requirements. Id.

Plaintiff now alleges that Defendants operated a fictitious PLLC as a law firm in California when it lacked such authority or approval. Id. ¶ 13. Furthermore, she alleges that through the use of a website, email, and the internet, Defendants solicited Plaintiff and putative class members to provide financial information, which Defendants used to obtain access to financial accounts and money under false pretenses. Id. ¶¶ 12, 14.

**STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)–(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction."

3

Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

If the district court determines that removal was improper, then the court may also award the plaintiff costs and attorney fees accrued in response to the defendant's removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

## ANALYSIS

In the present case, Defendants removed this action based on its claim that there is complete diversity of citizenship between the parties. There is no dispute that Plaintiff is a California resident and that Bryant, an Oklahoma resident, is diverse from Plaintiff. There is also no dispute that Conn is a California resident. On the face of the complaint, Plaintiff is therefore not diverse from all Defendants and diversity jurisdiction does not exist. Defendants nonetheless contend that Conn was fraudulently joined and, as a result, his citizenship should be ignored for purposes of determining diversity.

"[F]raudulently joined defendants will not defeat removal on diversity grounds." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). In assessing whether the joinder of a party is fraudulent and a "sham" intended only to defeat diversity, courts look to whether the plaintiff has failed to "state a cause of action against a resident defendant, and whether that failure is obvious according to the settled rules of the state." Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009) (citing Hamilton

Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007)).  Where plaintiff has obviously failed to state any claim under such settled law, remand for lack of diversity would be improper.  Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067–68 (9th Cir. 2001).

Defendants are entitled to present facts showing fraudulent joinder.  Ritchey, 139 F.3d at 1318.  There is a general presumption against fraudulent joinder, however, and it is the defendant's burden to prove it by clear and convincing evidence.  Hamilton Materials, Inc., 494 F.3d at 1206.  Simply alleging that a plaintiff has not pleaded sufficient facts to state a claim does not necessarily suffice if plaintiff could potentially amend the complaint to allege a viable claim.  Birkhead v. Parker, No. C 12-2264 CW, 2012 WL 4902695, at *2–3 (N.D. Cal. Oct. 15, 2012).  Nonetheless, if it is clear under state law that under no circumstance identified by a plaintiff could a viable claim be made against the defendant alleged to have been fraudulently joined, dismissal can still be appropriate.  See Good v. Prudential, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("[T]he defendant must demonstrate that there is no possibility the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.").  In other words, if there "exists 'a non-fanciful possibility' that plaintiff can state a claim under California law against the non-diverse defendant, the court must remand."  Hernandez v. Ignite Rest. Grp., Inc., 917 F. Supp. 2d 1086, 1091–92 (E.D. Cal. 2013) (quoting Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1169–70 (E.D. Cal. 2011)).  In sum, "'a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.'"  Id.

Although a defendant must show that there is virtually no chance that the plaintiff can state a viable claim in order to invoke fraudulent removal, that assessment must still be based largely on the allegations of the plaintiff's complaint.  Removability is therefore generally determined by the "four corners of the applicable pleadings, not through the

subjective knowledge or a duty to make further inquiry." Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). Diversity jurisdiction should consequently be analyzed at the time the complaint is filed and removal is effectuated. Strotek Corp. v. Air Transp., Ass'n of Am., 300 F.3d 1129, 1131 (9th Cir. 2002); Toth v. Guardian Indus. Corp., No. 1:12cv0001 LJO DLB, 2012 WL 468244, at *5 (E.D. Cal. Feb. 13, 2012) ("[T]he weight of authority holds that review of the complaint, even in fraudulent joinder cases, is constrained to the facts actually alleged therein.").

Here, Plaintiff sued Defendants in their individual capacities rather than NLLG. Plaintiff alleges that Defendants—a phrase which Plaintiff defines to include Conn— falsely advertised that NLLG, PLLC was qualified to render professional legal services in California despite its non-existence after September 22, 2017. Compl., ¶ 13. Ultimately, Plaintiff claims NLLG, PLLC is a fictitious law firm and thus not authorized to practice law in California.[2] Id. If true, then Plaintiff would have valid claims against Conn in his individual capacity.

The problem, however, is Defendants provided documentation confirming NLLG's status as a validly formed legal entity.[3] See Exs. C–E, Leveroni Decl. Notably, the documentation shows that Defendants converted NLLG, PLLC into a LLP and registered NLLG, LLP as a foreign LLP to practice law in California. Exs. E and G, Leveroni Decl. Therefore, Defendants' documentation contradicts Plaintiff's fictitious law firm theory and it is unlikely that Plaintiff can amend her three causes of action to show otherwise. Because NLLG is a valid entity, it appears that Plaintiff should have sued NLLG instead of Defendants, including Conn, in their individual capacities.[4]

---

[2] Both Plaintiff and Defendants recognize that PLLCs are not permitted to practice law in California. See Cal. Corp. Code § 17701.04(e); Defs.' Opp., ECF No. 6, at 7–8 ("Given that PLLCs are not permitted to practice law in California, NLLG was converted from PLLC to an LLP in order to practice law in California.").

[3] While Defendants bear the burden of proving fraudulent joinder, the Court notes that Plaintiff submitted many of the same documents as Defendants, which again illustrate that NLLG was a validly formed entity. See Exs. 6–10, McGrane Decl., Mot. Remand, ECF No. 4-2.

[4] As Defendants point out, the Complaint fails to address an alter ego theory of liability or justify piercing the corporate veil in order to hold either Defendant liable in their individual capacities.

Regardless, Plaintiff fails to connect any specific conduct to Conn. For example, Plaintiff alleges that "Defendants" personally solicited retainer agreements from Plaintiff and putative class members. Compl., ¶ 9. Plaintiff also asserts that "Defendants" emailed her two letters stating NLLG, PLLC was qualified to represent her in the debt collection actions. Id. ¶ 10. However, neither Conn's name nor signature appear on the retainer agreement or the letters. See Exs. 1–4, Compl. Nor is there any indication that Conn actually sent the emails on which Plaintiff relies. Thus, it appears that the only specific allegation against Conn is that he is co-owner of NLLG, which is insufficient.

In sum, the Court holds that there is no possibility that Plaintiff can state a viable or non-fanciful claim against Conn under the circumstances present here. Accordingly, the Court finds that Conn is fraudulently joined and consequently, complete diversity exists.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand, ECF No. 4, is DENIED.

IT IS SO ORDERED.

DATED: March 23, 2020

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE